NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREW A. McCRACKEN,<br><br>Plaintiff,<br><br>v.<br><br>COMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No.: 17-cv-6701<br><br>OPINION |

**CECCHI, District Judge.**

## I. INTRODUCTION

Before the Court is Plaintiff Andrew A. McCracken's appeal seeking review of a final determination by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying his application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act ("SSA" or the "Act"). This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is vacated and the case is remanded for further administrative proceedings.

## II. BACKGROUND

### A. Factual Background

Plaintiff, an adult male, was born on July 6, 1960. (Tr. at 29).[1] Plaintiff is a college graduate, and has previously worked as a computer systems maintenance administrator. (*Id.* at

---

[1] "Tr." refers to the certified record of the administrative proceedings. (ECF No. 8).

1

39). Plaintiff testified that he suffers from mental illnesses that make him unable to adapt to change. (*Id.* at 43). Plaintiff further testified that he suffers from social anxiety that makes it difficult for him to interact with people. (*Id.*). Plaintiff alleged that as a result of his condition he has been unable to work since August 2012. (*Id.* at 41). Plaintiff reports that his difficulties with attention and social interaction previously caused him to be fired from at least one job. (*Id.* at 43). Plaintiff further stated that he is depressed and often does not want to get out of bed. (*Id.* at 45). Additionally, Plaintiff represented that he has lost interest in his usual activities, (*id.* at 46), that his ability to receive information from others is impaired, (*id.*), and that he is frequently unable to finish tasks that he begins. (*Id.* at 48). Finally, Plaintiff's wife is disabled, and he testified that he provides her care at home. (*Id.* at 47-48).

**B.   Procedural Background**

On April 10, 2014, Plaintiff filed an application for a period of disability and DIB pursuant to Title II of the SSA. (*Id.* at 154). On July 25, 2014, Plaintiff's application was initially denied. (*Id.* at 66). On October 23, 2014, Plaintiff's application was once again denied on reconsideration. (*Id.* at 78). Plaintiff requested an ALJ hearing, and such hearing was conducted on November 23, 2016. (*Id.* at 35-65). On February 7, 2017, the ALJ issued his opinion concluding that Plaintiff was not disabled within the meaning of the SSA at any point from his alleged onset date of August 30, 2012 through the date of the decision. (*Id.* at 19-30). Plaintiff next sought review by the Appeals Council, which denied review on July 6, 2017. (*Id.* at 1). Thereafter, Plaintiff instituted this action seeking judicial review of the ALJ decision.

## III. LEGAL STANDARD

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

### B. Determining Disability

In order to be eligible for benefits under the SSA, a plaintiff must show he is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

3

lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for SSA purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

C. **Sequential Evaluation Process**

The Social Security Administration follows a five-step, sequential evaluation to determine whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the plaintiff is currently engaged in gainful activity. *Sykes*, 228 F.3d at 262. Second, if he is not, the ALJ determines whether the Plaintiff has an impairment that limits his ability to work. *Id.* Third, if he has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. *Id.* If the

impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of his impairment. *Id.* at 263. Fourth, the ALJ must consider whether the plaintiff's RFC is enough to perform his past relevant work. *Id.* Fifth, if his RFC is not enough, the ALJ must determine whether there is other work in the national economy the plaintiff can perform. *Id.*

The evaluation continues through each step unless it is determined at any point the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The plaintiff bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. *Sykes*, 228 F.3d at 263. Neither party bears the burden at step three. *Id.* at 263 n.2.

## IV. DISCUSSION

### A. Summary of the ALJ decision.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between August 30, 2012, Plaintiff's alleged onset date, and June 30, 2016, Plaintiff's last insured date. (Tr. at 21). At step two, the ALJ found that Plaintiff suffered from six severe impairments: bipolar disorder, depressive disorder, anxiety disorder, post-traumatic stress disorder, personality disorder, and attention deficit hyperactivity disorder ("ADHD"). (*Id.*). However, at step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (*Id.* at 22).

In reviewing Plaintiff's claims, the ALJ considered the medical evidence of record. Of particular note, the ALJ considered the opinion of Mehr Iqbal, M.D., a psychiatrist at Bergen Regional Medical Center who treated Plaintiff. On October 23, 2014, Dr. Iqbal completed a mental health assessment of Plaintiff and concluded, based on her treatment of Plaintiff between July and October 2014, that Plaintiff suffered from "a persistent and irrational fear of a specific object,

5

activity, or situation, which results in a compelling desire to avoid the dreaded object, activity, or situation" and "[r]ecurrant intrusive recollections of a traumatic experience, which are a source of marked distress[.]" (*Id.* at 307). Further, Dr. Iqbal indicated that Plaintiff suffered moderate restrictions of daily living, marked difficulties maintaining social functioning, and marked difficulties maintaining concentration, persistence, or pace. (*Id.* at 308). Although the above indications were made by check-box, Dr. Iqbal also opined by hand-written notation that Plaintiff was "unable to manage his affairs without [illegible] help . . . he has limited social [and] cognitive ability." (*Id.*). Finally, Dr. Iqbal indicated that Plaintiff's condition was expected to last for at least one year. (*Id.*).

Upon consideration of Plaintiff's RFC, the ALJ reviewed Dr. Iqbal's opinion, but did not provide it with conclusive weight. The ALJ indicated that Dr. Iqbal's opinion was afforded "[s]ome weight," in consideration of the fact that Dr. Iqbal was Plaintiff's treating psychiatrist. (*Id.* at 28). However, the ALJ concluded that portions of Dr. Iqbal's opinion were inconsistent with the remainder of the record. (*Id.*). Having afforded limited weight to Dr. Iqbal's conclusions, the ALJ relied upon other evidence in reaching his RFC conclusion. In particular, the ALJ afforded "substantial weight" to two State agency consultants, who each concluded that Plaintiff was not disabled and could perform simple, unskilled work. (*Id.* at 28-29). The ALJ then found that Plaintiff retained the RFC to perform medium work as defined by 20 CFR § 404.1567(c), with additional non-exertional limitations. (*Id.* at 23).

At step four, the ALJ found that through the last date insured, Plaintiff was unable to perform any past relevant work. (*Id.* at 28). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (*Id.* at 29). Thus, the ALJ concluded

6

that Plaintiff was not disabled, within the meaning of the SSA, at any point from the alleged onset date through Plaintiff's date last insured. (*Id.* at 30).

**B. Analysis**

As noted above, the ALJ afforded only limited weight to Dr. Iqbal's opinion upon consideration of Plaintiff's RFC. The ALJ remarked:

> Some weight is accorded [Dr. Iqbal's opinion] as [she] has provided the claimant mental health treatment at Bergen Regional Medical Center. However, in reviewing treatment records, it is reported that [Plaintiff] is stable with treatment with no signs of psychosis, intact memory, attention and concentration. The extent of limitations assessed as "marked" is not consistent with treatment records or claimant's daily activities. [Plaintiff] reported that he handles most household chores and provides care for his physically ill wife.

(*Id.* at 28) (citations omitted). Plaintiff contends that the ALJ's decision regarding the appropriate weight to be given to Dr. Iqbal's opinion was unreasonable and insufficiently explained. He therefore maintains that the ALJ's opinion should be vacated and remanded for further consideration of Dr. Iqbal's opinion. (ECF No. 16 at 12-21). The Court agrees.

Where, as here, the record contains conflicting medical evidence, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). "The ALJ must consider all the evidence and give some reason for discounting the evidence []he rejects." *Id.* (citing *Stewart v. Sec'y of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983)). Here, the Court finds that the ALJ's decision to grant only "some weight" to the opinion of Dr. Iqbal, Plaintiff's treating physician, was not supported by substantial evidence because the supposedly contradictory findings cited by the ALJ did not actually contradict Dr. Iqbal's opinions.

First, the ALJ found that Dr. Iqbal's opinion was contradicted by Plaintiff's treatment records. In particular, the ALJ noted that Plaintiff was "stable with treatment," had "no signs of

7

psychosis," and "intact memory, attention and concentration". (Tr. at 28). Although, among the several hundred pages of medical records cited without specificity by the ALJ, there do appear records of mental status exams noting that Plaintiff had "intact" memory, attention span, and concentration, *see e.g.* (*id.* at 424), no explanation of the significance of such findings is apparent from the record. What is apparent to the Court is that these findings, without more, do not represent substantial evidence contradicting Dr. Iqbal's opinions because the records in which such findings appear, read holistically, are not inconsistent with marked impairment of Plaintiff's ability to maintain concentration in a work setting. For example, in treatment notes from Plaintiff's August, 12, 2015 appointment, alongside the findings that Plaintiff's concentration and attention span were "intact," (*id.* at 28), there appears the conclusion that Plaintiff's dosage of Ritalin, a stimulant used to treat attention disorders, should be increased based on Plaintiff's report that his ability to concentrate diminished significantly in the afternoon. (*Id.* at 422). Thus, whatever the notations about "intact" concentration span and memory may mean, the record as a whole does not support the ALJ's conclusion that they signified that Plaintiff experienced only relatively mild difficulties with concentration, persistence, or pace. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician]'s statements must be read in context of the overall diagnostic picture he draws.").

As further evidence that Dr. Iqbal's opinion was inconsistent with Plaintiff's treatment records, the ALJ states that treating physicians noted Plaintiff to be "stable with treatment". (Tr. at 28). Although such remarks do appear in the record, *see e.g.* (*id.* at 416) (noting that Plaintiff's symptoms were "well under control" with treatment), precedent in this Circuit has established that such general statements indicating that a patient is stable in the context of treatment are not necessarily incompatible with either disability or a treating physician's opinion finding disability.

8

For instance, in *Morales v. Apfel*, the Third Circuit held that an ALJ improperly discounted opinion evidence from the plaintiff's treating physician on the basis of statements similar to those relied upon by the ALJ here:

> [It was improper] for the ALJ to reject [a treating physician]'s opinion based on [his] notation that [the plaintiff] was stable with medication. The relevant inquiry with regard to a disability determination is whether the claimant's condition prevents him from engaging in substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A). For a person, such as [the plaintiff], who suffers from an affective or personality disorder marked by anxiety, the work environment is completely different from home or a mental health clinic. [The treating physician]'s observations that [the plaintiff] is "stable and well controlled with medication" during treatment does not support the medical conclusion that [the plaintiff] can return to work. [The treating physician], despite his notation, opined that [the plaintiff]'s mental impairment rendered him markedly limited in a number of relevant work-related activities. Other information in the treatment records supports this opinion. Thus, [the treating physician]'s opinion that [the plaintiff]'s ability to function is seriously impaired or nonexistent in every area related to work shall not be supplanted by an inference gleaned from treatment records reporting on the claimant in an environment absent of the stresses that accompany the work setting.

225 F.3d 310, 319 (3d Cir. 2000). Here, as in *Morales*, the ALJ has taken a summary statement regarding Plaintiff's functioning in the context of the treatment environment and applied it, inappropriately, to conclude that Plaintiff could function adequately in a work environment. Thus, the Court finds that the ALJ's conclusion that Plaintiff's treatment records were inconsistent with Dr. Iqbal's opinion was unreasonable.[2]

Second, the ALJ found Dr. Iqbal's opinion to be inconsistent with reports of his daily activities. (Tr. at 28). The ALJ notes that Plaintiff has reported being able to help with household chores, do laundry, drive a car, and go grocery shopping. (*Id.* at 27). The ALJ further noted that Plaintiff testified about caring for his physically disabled wife. (*Id.* at 28). The ALJ refers to such

---

[2] As for the finding that Plaintiff had no signs of psychosis, since Plaintiff does not allege psychosis and the ALJ did not find psychotic symptoms to be among Plaintiff's severe impairments, such finding is simply irrelevant.

9

activities as contradicting "the extent of limitations assessed as 'marked'" by Dr. Iqbal, (*id.*); regarding Plaintiff's restrictions of daily living, however, Dr. Iqbal merely concluded that Plaintiff suffered "moderate" restrictions. (*Id.* at 308). The ALJ does not explain why the record evidence of Plaintiff's daily activities contradicts Dr. Iqbal's findings regarding Plaintiff's limitations in other areas where "marked" limitation was found, specifically his difficulties in maintaining social functioning and in maintaining concentration, persistence, and pace. This omission is especially important in light of Plaintiff's testimony about his limitations in performing housework and caring for his wife.

For instance, the record does not reflect that the ALJ considered, in the context of assessing the consistency of Dr. Iqbal's opinion with the record, Plaintiff's testimony that he is unable to complete many household chores because his attentional issues lead him to abandon many tasks prior to completion. (Tr. at 48). Nor does the record reflect consideration, in this context, of Plaintiff's testimony that although he is able to take care of his wife, he would not be able to perform such services for a person other than his wife because of his social difficulties. (*Id.*). Because the ALJ does not adequately explain why reports that Plaintiff performed chores, with limitations, and took care of his wife were inconsistent with Dr. Iqbal's findings about limitations in areas other than his activities of daily living, and because the ALJ does not appear to have conducted a complete examination of the record, the Court cannot conclude that the ALJ's decision that the record evidence was in conflict with Dr. Iqbal's opinion was supported by substantial evidence. *See Greco v. Berryhill*, No. 16-7829, 2018 WL 6716840, at *4 (D.N.J. Dec. 20, 2018) (remanding where the ALJ, upon discounting a physician's opinion because of inconsistency with reports of the plaintiff's daily activities, failed to conduct a full examination of the record including the plaintiff's testimony about her limitations and related record evidence).

Therefore, the Court cannot conclude that the ALJ's decision about the appropriate level of weight to provide to Dr. Iqbal's opinion was rational and supported by substantial evidence. Accordingly, the Court will remand to the ALJ for further consideration of Dr. Iqbal's opinion. On remand, the ALJ is not required to accept Dr. Iqbal's opinion, but must provide a rational explanation for the level of weight he chooses to afford to it. *See Plummer*, 186 F.3d at 429 ("An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided.").

### C. Plaintiff's Other Arguments

Plaintiff makes other arguments as to why the ALJ's decision should be remanded. Because the Court finds that the ALJ's opinion was not supported by substantial evidence, it will remand and need not consider such arguments at this juncture. However, the Court notes Plaintiff's suggestion that some of his treatment records from Bergen Regional Medical Center are missing from the record. (ECF No. 16 at 15-16). To ensure an appropriate and expeditious resolution of this matter on remand, the parties should take care that the ALJ possesses a complete record upon which he is able to render a decision based on substantial evidence.

### V. CONCLUSION

For the foregoing reasons, the Court will vacate the ALJ's decision and remand this case for further administrative proceedings consistent with this Opinion. An appropriate Order follows.

DATED: March 28, 2019

_____
CLAIRE C. CECCHI, U.S.D.J.